152 So.2d 445

**HARTFORD FIRE INSURANCE COMPANY**

v.

**Lewis C. JONES.**

**1 Div. 924.**

Court of Appeals of Alabama.

April 9, 1963.

W. C. Boone, Jr., and Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellant.

Jas. A. Brice, Foley, for appellee.

JOHNSON, Judge.

Hartford Fire Insurance Company appeals a judgment rendered against it by the Baldwin County Circuit Court for $476.00 in favor of appellee, Lewis C. Jones, who sued on a homeowner's policy.

On June 3, 1960, A. J. Noland purchased a boat, outboard motor, and trailer from Bonfanti Industries, Inc., at Baton Rouge, Louisiana, for $846.24. He gave Bonfanti a promissory note for the purchase and a chattel mortgage on the boat, motor, and trailer. Bonfanti assigned the note and mortgage to Associates Finance, Inc., of Baton Rouge, Louisiana, on or before June 16, 1960, when the paper was filed for record in the parish of East Baton Rouge, Louisiana. In the chattel mortgage, Noland promised not to remove the property from Louisiana. In the latter part of July, or early part of August, 1960, Noland entered into a business arrangement with appellee, Jones. In his testimony, Jones described the arrangement as follows:

> "Mr. Noland was one of my dealers; I had a distributorship for a company in New Orleans who distributed a DO-IT-YOURSELF Exterminating kit; these were sold to home owners; Mr. Noland was one of the salesmen. By arrangement with all of my salesmen or dealers, when they would sell the kit on time contract basis, I would buy the contract from them, the difference between his price and the price he sold it at was what he would make, and it was sometimes called commission. but that's not correct, it was discount; he bought it at wholesale and sold it at retail and I handled the paper work for him. * * *"

At about the time Noland entered into the business arrangement with Jones, he brought the boat, motor, and trailer to Jones' home in Baldwin County, Alabama, where it remained until October 25, 1960, except when being used in the adjacent water by Noland and the Jones family. By

September 27, 1960, Noland was unable to continue their business arrangement. Jones had advanced money to Noland as loans and at that time Noland and Jones believed the balance of the debts between them was $526.72 owed by Noland to Jones. Since that time, Jones has discovered that the balance actually was around $800.00

At this point, the testimony becomes conflicting. The appellee testified that he told Noland that he would cancel the $526.72 debt in exchange for the boat, motor, and trailer. He introduced into evidence the following bill of sale:

> "9/27/60
> "I, A. J. Noland, hereby sell, convey, and assign my boat, 35 HP engine, and trailer to L. C. Jones for $526.72, which I have received.
>
> > "Signed A. J. Noland
> > "A. J. Noland."

He claims title to the property by virtue of this sale and denies having had, prior to the sale, any knowledge concerning any chattel mortgage on the property.

The boat, motor, and trailer remained in his possession on his land until October 25, 1960, at which time it disappeared. Upon discovering the loss, Jones notified the appellant's agent. When appellant refused to indemnify him, he brought this suit.

The defense introduced a deposition taken from Noland in Louisiana. The story related by Noland varies materially from Jones' testimony in the following particulars. The amount of the indebtedness that Noland owed Jones on September 27, 1960, was $420.00. Noland explained the arrangements that were made at this time as follows:

> "First of all, he told me he must protect himself – – for his business. He had no collateral for the amount of money I owed him. Well, actually, an advance – – as I said, I don't believe it's collectable by law, but Mr. Jones had been good to me. I thought that I – – to show him I'm in

good faith, I'll go along with him. He asked me about the boat, and I told him I could not let him hold the boat as collateral, because at that time I was behind in payments. I said, I can let you have a second mortgage if you desire. And then I left to do something – – clear up a few minor details, and I came back, and he had this paper drawn up for me to sign where I was selling him my boat for 400 and – – I'm sorry, for $526. And I told him I couldn't sign it, because I didn't own the boat – – it wasn't mine. I said, 'You can have a second mortgage.' He said, 'We'll let this act as second mortgage.' I said, 'Fine' I signed it. He said 'Now Andy,' he said, 'I don't want your boat.' He said 'I in turn will give you a chattel mortgage on it to show you I'm in good faith also where you can have your boat back.' So I said, 'all right.' So it amounted to $526 less $106 he had owed me, leaving a balance of $420. And then I left Alabama. He told me I could pay that back just any – – any what I so desired. He left the payment portion of it blank as you can see from my copy here. He left the payment portion blank. He said, 'You pay it back like you want to' So I came here – – the finance company wanted to get the boat."

The note and chattel mortgage in which Noland promises to pay Jones $420.00 as the balance due for "value received" on a total cash price of $526.72 and signed by Adrian J. Noland as Mortgagor-Buyer was introduced into evidence by the appellant. The note and chattel mortgage provide, "Mortgagors may possess said property until default in making any payment on said note." The mortgage is on the boat, motor, and trailer.

Noland testified that he did not take the property back to Louisiana when he left in September because his car did not have a trailer hitch. At this time he had paid only $70.52 on the note to Associates Finance,

Inc. The creditor told him to bring the property back to Louisiana. On October 25, 1960, he returned with a friend in his father's car to Alabama. He looked for Jones and asked his whereabouts. Not being able to locate Jones, he left a message with Jones' domestic servant and took the boat, motor, and trailer back to Louisiana, where Associates Finance, Inc., foreclosed the mortgage and bought it in at a sheriff's sale for $333.34. The motor was subsequently stolen from Associates, for which they recovered $325.00 from their insurance company and they sold the boat and trailer for $125.00 at a private sale.

The plaintiff brought suit on the policy which promised to indemnify appellee for loss by theft of personal property, including watercraft up to a value of $500.00. The defendant plead the general issue in his pleas 1 and 2 and pleas in bar 3 and 4 as follows:

"3. Defendant avers that at the time of the alleged theft, Bonfanti Industries, Inc., held a chattel mortgage on the boat in question which secured the unpaid balance due to Bonfanti Industries for the balance of the purchase price of said boat; that the unpaid balance of the purchase price on said boat which was secured by said mortgage was an amount in excess of the fair market value of said boat at the time of the alleged theft; hence plaintiff ought not recover.

"4. Further comes the defendant and pleading specially by way of mitigation, avers that, at the time of the alleged theft, Bonfanti Industries, Inc. held a chattel mortgage on the boat in question to secure the unpaid balance of the purchase price of same which was owed Bonfanti Industries; and defendant avers that plaintiff's alleged loss in the premises, if any, should be reduced to a sum equal to the difference between the fair market value of the boat at the time of the alleged theft and said unpaid balance; hence this plea by way of mitigation."

The main thrust of appellant's brief is that the court erred in refusing his requested charge 13 assigned as assignment of error 17, "I charge you that if you believe the evidence in this case you must find for the defendant under their plea 3." The appellant contends that the undisputed evidence of the case shows that there was a mortgage on the property for more than the value of the property which proved its plea in bar and, therefore, it was error to refuse the general charge with hypothesis as to plea 3. The appellee points out that the plea alleges that the chattel mortgage was held by Bonfanti Industries, Inc., but that the evidence conclusively proves that the mortgage was held by Associates Finance, Inc., and, therefore, charge 13 was properly refused. We believe that the appellee presents the better view of these niceties of pleading and proof. Conway v. Matthews, 37 Ala.App. 513, 70 So.2d 827; Myers v. Moorer, 273 Ala. 18, 134 So.2d 168.

We observe in the record no evidence that the chattel mortgage had been recorded in Alabama as required by Code of Ala., Tit. 47, Secs. 111 and 123.

"§ 111. Incumbrances on personal property brought to the state; where recorded.—Whenever any personal property is subject to any lien, incumbrance, mortgage, or trust for the security of debts, at the time of its removal to this state, the writing evidencing the lien, incumbrance, mortgage or trust, must be recorded in the county into which it is brought, and remains, within three months after the arrival of such property."

"§ 123. Conveyances of personalty securing debts, etc., when recorded; effect of failure.—Conveyances of personal property to secure debts, or to provide indemnity, are inoperative against creditors and purchasers without notice, until recorded, unless the property is brought into this state subject to such incumbrances, in which case three months are allowed for the registration of the conveyance; and if

such property is removed to a different county from that in which the grantor resides, the conveyance must be recorded in such county within three months from the removal, or it ceases to have effect after such three months against creditors or purchasers of the grantor without notice."

If the arrangement between Jones and Noland on September 27, 1960, was a sale, then Jones owned the property free and clear of any liens claimed by the Louisiana creditor.

 It is within the province of the jury alone to believe or disbelieve the witnesses and in determining the correctness of a trial court's refusal to give affirmative instructions for a defendant the entire evidence must be reviewed in its most favorable aspect for the plaintiff. William E. Harden, Inc., v. Harden, 29 Ala.App. 411, 197 So. 94. Since the jury has returned a verdict for the appellee, we must conclude that they believed his testimony that the transaction was a sale and that he did not know of the Louisiana lien.

Appellant's other assignments of error are without merit.

Affirmed.